**STATE of Tennessee, Appellee,**

v.

**James John COLSTON, Appellant.**

**No. 175.**

Court of Criminal Appeals of Tennessee, at Knoxville.

May 19, 1983.

Permission to Appeal Denied by Supreme Court Sept. 6, 1983.

Howard Dunbar, Johnson City, for appellant.

William M. Leech, Jr., Atty. Gen. and Reporter, Steven A. Hart, Asst. Atty. Gen., Nashville, Lynn Brown, Asst. Dist. Atty. Gen., Elizabethton, for appellee.

## OPINION

DWYER, Judge.

A jury convicted appellant for committing the offense of robbery with a deadly weapon and aggravated assault, and set punishment at 25 years and not less than four nor more than six years respectively.

This appeal as of right raises four issues: whether the evidence was insufficient to support the verdict; whether the trial court erred in overruling appellant's motion to suppress the identification of appellant by the victim; whether the trial court erred in limiting appellant's cross-examination of the victim; and whether the trial court

erred in denying appellant's motion for a mistrial.

A Norman Sanders, age 17, was walking to a friend's house in Johnson City around 9:00 p.m. on February 7, 1981. He noticed a dark, early 1970's model Ford or Mercury car pass by and park near the Sac-N-Save grocery store near the intersection of West 10th and Boone Street. A black man with a dark coat alighted, approached Sanders and demanded his money. When Sanders ran, he was shot in the left side of his back. His assailant approached saying, "Get up you m———— f————, you're not dead." He took the youth's billfold and rifled through it; finding it empty, he threw it down, got back into his car and fled. The youth noted that the car had "mag" wheels on it. The youth gave police at the hospital a description of the person who had assaulted him.

The appellant was arrested the same night while driving a 1974 Mercury car with "mag" wheels on it. When accosted by police the appellant consented to a search of his car. A .22 caliber revolver was found under the seat. It had a spent cartridge in it and five live rounds. A search of appellant's person uncovered a box of .22 shorts in his coat pocket. The youth identified the appellant at a lineup on February 25, 1981, as the person who shot him and rifled his billfold. He identified appellant as the robber at trial.

Medical testimony adduced by the State showed that deflection of the bullet when it entered the youth's back prevented the wound from being fatal.

The appellant, testifying in his own behalf, related that he was watching television with his girl friend at 9:00 p.m. on February 7, 1981. In short, he denied committing the robbery and asserted that he was at another place. The State's proof revealed that the distance from the point of the robbery to the girl friend's house was one mile and could be driven in two-and-one-half minutes.

■ . In reaching its verdict, the jury rejected appellant's alibi defense; this is a matter within the jury's domain. *Forbes v.*

*State,* 559 S.W.2d 318, 324 (Tenn.1977). The effect of the verdict is to resolve all conflicts in the testimony in favor of the State. On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832, 836 (Tenn.1978). The youth positively identified appellant as his assailant both at trial and at a lineup; the youth's description of the assailant and his car substantially matched the appellant and the car he was driving at the time of his arrest. The youth was shot with a .22 caliber short or long bullet; when the appellant was arrested a short while later, he was in possession of a .22 pistol which fired shots and had one spent shell in the chamber. These are but a few of the overwhelming facts upon which a rational juror could and did find guilt beyond a reasonable doubt. T.R.A.P. 13(e). The evidence issue is overruled.

The appellant was identified by the victim in a lineup which was conducted by the Johnson City police on February 25, 1981. Participants were rounded up from the community and paid ten dollars apiece to attend the lineup. An attorney for appellant was present and was permitted to make suggestions and question the participants. The attorney testified at trial that all the participants were asked if they knew the victim and the ones who said they did were excluded. The evidence indicates that all six participants in the lineup were black males, all wore *moustaches*, and all were of similar age, height, and build. Despite the obviously sincere efforts of the police to avoid suggestiveness in the lineup, the victim testified at the suppression hearing and at trial that he knew one of the participants and had seen two others playing basketball at a local community center. In addition, he had previously seen the appellant across the street from his home.

■ Appellant contends that the identification procedure used here was overly suggestive and that evidence of the lineup should have been excluded from the trial. He further argues that the victim's in-court

identification did not have any independent origin and should also have been excluded. There is no need to reach this second point, since we hold that the lineup procedure was well within due process guidelines. The due process standard for admissibility of an out-of-court identification is whether the procedures used were so unnecessarily suggestive as to give rise to a very substantial likelihood of misidentification. *Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972). The United States Supreme Court in *Neil v. Biggers, supra,* set out five factors to consider in evaluating the likelihood of misidentification:

"... the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

The reliability of the identification itself, as determined by these factors, is to be analysed in light of the suggestiveness of the identification procedure and the totality of the circumstances to discover whether due process has been violated. *See Forbes v. State, supra; Bennett v. State,* 530 S.W.2d 511 (Tenn.1975).

■ In this case, the victim testified that he observed the appellant for five minutes as the appellant stood above him. He stated that a nearby street light provided enough light to see his attacker. Also, the appellant's face was not totally unfamiliar to the victim, who had seen appellant across the street from his home on two or three prior occasions. The victim's attention was undivided. After being shot and robbed, the victim was anything but a casual observer. The victim gave a detailed description of the appellant a short time after the attack. According to the officer who took the victim's statement, appellant was described as a black male with short hair, a moustache and goatee, 5 feet 8 inches tall, slim, in his mid-twenties, wearing a dark coat, and having a "cocked eye". At the time of his arrest, appellant substantially fit this description. The victim made a

positive and unequivocal identification of the appellant at the lineup. The crime took place on February 7, 1981, and the lineup was held on February 25, 1981. Analysis of these factors amply supports the conclusion that the identification was reliable.

■ In viewing the totality of the circumstances, we uphold the trial court's finding that the identification procedures were not impermissibly suggestive. The record tends to show that any suggestiveness caused by the victim knowing some of the lineup participants was not deliberately brought about by the police. *Forbes v. State, supra.* Likewise, the fact that appellant was wearing prison-issue denim pants or that his hair was messed up does not indicate an inordinate degree of suggestiveness. *See State v. Wilson,* 611 S.W.2d 843 (Tenn.Cr.App.1980). This issue is overruled.

■ The third issue is whether the court erred in limiting appellant's cross-examination of the victim. The appellant attempted to show that the victim was involved with drug activities and that the shooting was a result thereof. The basis for such questions grew out of the arrest, a year after the shooting, of a person who once rented the basement area of the youth's home. Appellant also sought to introduce the testimony of a narcotics officer who had heard the youth's name mentioned in connection with drug activities, although he acknowledged that he had never seen or caught the youth in such activities. Simply put, this alleged connection of the youth to drug traffic was not material. The trial court did not abuse its discretion in limiting the cross-examination or in not permitting the testimony of the officer before to be heard by the jury. *Long v. State,* 607 S.W.2d 482, 485 (Tenn.Cr.App.1980); *Matlock v. State,* 566 S.W.2d 892, 894 (Tenn.Cr. App.1978). There is no error here.

■ The last issue: The trial court, obviously confused, upheld the State's objection to appellant's argument that the lineup was suggestive. With the jury out, the State informed the court that its objection

was not based on the lineup argument but on what it believed to be a quoting from inapplicable case law. The trial court recalled the jury and charged:

"Ladies and gentlemen of the jury, before you went out, General Brown objected and now he withdraws his objection, and then I want to make one other statement. Prior to your going out, I made a statement that I had ruled that the line up was not suggestive. Please disregard my statement, my ruling was in your absence, earlier today or yesterday, was really a different ruling on something else, and you consider whether or not the line up was suggestive in deciding the defendant's identity. All right."

The appellant was then allowed to resume his argument as to the suggestiveness of the lineup. The prompt instructions cured any error here. *State v. Barton,* 626 S.W.2d 296, 298 (Tenn.Cr.App.1981). This issue overruled, the judgment of the trial court is affirmed.

CORNELIUS and SCOTT, JJ., concur.